IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **ZACHERY D. HENRY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | **5:11-cv-2267-AKK** |
| **MICHAEL J. ASTRUE,** ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Zachery D. Henry ("Henry") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence and, therefore, **AFFIRMS** the decision denying benefits.

### I. Procedural History

Henry filed his application for Title XVI Supplemental Security Income on

October 19, 2007, (R. 65), alleging a disability onset date of October 17, 2007, (R. 41).  Henry alleges that he is unable to work due to "depression, nerves, hears and sees things, [and] cannot write [because of] nerves."  (R. 105).  After the SSA denied his application on December 12, 2007, (R. 67), Henry requested a hearing, (R. 72).  At the time of the hearing on August 14, 2009, (R. 36), Henry was 21 years old, (R. 40), had a tenth grade education, (R. 42), and past relevant work that included heavy, skilled work as a concrete finisher, (R. 25, 58), light, unskilled work as a fast food worker, (R. 58), and very heavy, unskilled work as a construction worker, *id*.  Henry has not engaged in substantial gainful activity since October 19, 2007.  (R. 18).

    The ALJ denied Henry's claims on September 10, 2009, (R. 13), which became the final decision of the Commissioner when the Appeals Council refused to grant review on April 27, 2011, (R. 1-5).  Henry then filed this action pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3).  Doc. 1.

## II.  Standard of Review

    The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988);

*Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence."  *See id*.  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1)   whether the claimant is currently unemployed;

(2)   whether the claimant has a severe impairment;

(3)   whether the impairment meets or equals one listed by the Secretary;

(4)   whether the claimant is unable to perform his or her past work; and

(5)   whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other

than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

The ALJ initially determined that Henry had not engaged in substantial gainful activity since his alleged onset date, and therefore met Step One. (R. 18). Next, the ALJ acknowledged that Henry's severe impairments of adjustment disorder with depression and personality disorder met Step Two. (R. 18). The ALJ then proceeded to the next step and found that Henry did not satisfy Step Three since he "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." *Id*. Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that Henry

> has the residual functional capacity [RFC] to perform a full range of work at all exertional levels.  He should be required to perform only simple tasks, with no detailed or complex tasks, allowed to have all customary work breaks, and should have only casual interaction with others and non-confrontational supervision.

(R. 19). In light of Henry's RFC, the ALJ held that Henry was "unable to perform any past relevant work." (R. 25). The ALJ then moved on to Step Five where he

considered Henry's age, education, experience, and RFC, and determined that "jobs . . . exist in significant numbers in the national economy that [Henry] can perform." (R. 26). As a result, the ALJ answered Step Five in the negative, and determined that Henry is not disabled. (R. 24-25); *see also McDaniel*, 800 F.2d at 1030. It is this finding that Henry challenges.

## V. Analysis

Henry's contention that the ALJ committed reversible error rests entirely on treating physician Dr. Sultana Begum's ("Dr. Begum") treatment notes. Specifically, Henry contends that the ALJ erred because he failed to "indicate a [Global Assessment of Functioning ("GAF")] score of 40 in October 2007 and GAF of 50 in November 2007,"[1] doc. 9 at 6, and to "properly conduct an impartial evaluation of the evidence" because he "recorded only the GAF scores that would indicate Plaintiff not to be disabled," doc. 9 at 8.[2] In other words, Henry contends that Dr. Begum's assessment of Henry's GAF scores establishes conclusively that

---

[1] Dr. Begum assessed Henry's GAF score of 50 on December 7, 2007. (R. 335).

[2] The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32-34 (4th ed. 2000), presents the Global Assessment of Functioning ("GAF") Scales, which is widely used to score the severity of psychiatric illnesses. A GAF score of 40 indicates "some impairments in reality testing (e.g., speech is at times illogical, obscure, or irrelevant) or communication or major impairment in several areas such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work)," and 50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."

Henry's mental impairments are disabling.

In light of Henry's contention, the court must obviously focus on Dr. Begum's opinion and diagnosis, but will review also other medical records as it related to Henry's mental impairments. In that regard, on October 31, 2007, Henry visited the Mental Healthcare Cullman ("Mental Healthcare") where Henry's intake diagnosis consisted of attention deficit hyperactivity disorder by history, recurrent major depression disorder, and mild mental retardation. (R. 283). Henry's intake evaluation noted also that he had (1) minor problems related to social withdrawal, somatic preoccupation, general physical health, appetite, anger, and homicidal thoughts, (2) moderate problems regarding concentration, phobias, delusions (100 voices talking together), hallucinations, judgment, insight, "fund" of knowledge, memory, family, and peers, and (3) major problems related to attention span, personal hygiene, paranoia, anxiety, depression, shaking, and sleep disturbance. (R. 284). Dr. Begum diagnosed Henry with non-specific psychotic disorder and assessed a GAF score of 40. (R. 340).

The next month, on November 20, 2007, Dr. Mary Arnold ("Dr. Arnold") completed a Psychological Evaluation and noted that Henry was alert and oriented, can mentally calculate, repeat five digits forwards and backwards, count backwards from 20, count by 7's, name the months of the year, describe

similarities between objects, speak fluidly, make eye contact, and responded timely in the "usual range." (R. 287). Dr. Arnold assessed Henry's "fund" of knowledge and determined that Henry can locate Brazil on a map, name current and former Presidents of the United States, the governor, capitol cities, seasons, directions, and two oceans, knew about with September 11 and the Iraq war, and can identify Martin Luther King, Jr., Abraham Lincoln, Christopher Columbus, and William Shakespeare. *Id*. Dr. Arnold found that Henry contributed to the household and managed funds and that Henry presented his gasoline voucher at the completion of the interview. (R. 289). Dr. Arnold diagnosed Henry with adjustment disorder with depression, personality disorder, and assigned a GAF score of 57.[3] *Id*.

On December 7, 2007, Henry presented again to Mental Healthcare because he was "seeing things." (R. 334). Henry reported a fair appetite, low energy, poor concentration, normal interests, and insomnia. (R. 335). Dr. Begum diagnosed Henry with non-specific psychosis, "rule out schizophrenia," paranoia, assigned a GAF score of 50, and prescribed Zyprexa.[4] *Id*.

---

[3] A GAF score of 57 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

[4] Zyprexa is used to treat schizophrenia.

Henry's next visit to Mental Healthcare occurred on February 6, 2008, during which Henry stated that he "is doing better than before," and that his medication "helps with quitting seeing and hearing things. I still see things but not as bad." (R. 331). Dr. Begum observed that Henry was "still depressed," had decreased paranoia, flat affect, normal appetite and sleep, and fair concentration and energy. *Id*. Dr. Begum increased Henry's Zyprexa and prescribed Prozac.[5] (R. 332).

Dr. Begum evaluated Henry again on April 7, 2008, during which Henry stated again that he is "still depressed" but that Prozac "helps some." (R. 327). Dr. Begum noted that Henry had a flat affect with no audio hallucinations and decreased visual hallucinations. *Id*. Dr. Begum increased Henry's Prozac, (R. 328), and scheduled Henry for a follow up evaluation in three months, (R. 327).

Three months later, Dr. Begum evaluated Henry on July 7, 2008, and noted "increased anxiety," shaking, "lots of family problems," normal interests and appetite, fair energy and concentration, and decreased audio and visual hallucinations. (R. 319). Henry reported that he "will stay busy remodeling his house and play[ing] with his new kitten as [a] coping strategy." (R. 321). Dr. Begum assessed Henry's GAF score as 50-51, (R. 322), decreased Henry's Prozac,

---

[5]Prozac is used to treat depression.

and prescribed Atarax,[6] (R. 320).

Dr. Begum evaluated Henry again on July 18, 2008, for "real bad nerves all the time." (R. 316). Dr. Begum reported that Henry had normal interests, appetite, and sleeping patterns, fair energy and concentration, and without audio or visual hallucinations. *Id*. Dr. Begum instructed Henry to continue Prozac and Zyprexa and prescribed a medication that is illegible. (R. 317).

Finally, Henry visited Dr. Begum on October 20, 2008, where Henry reported "life is pretty good." (R. 315). Dr. Begum noted that Henry had normal interests, appetite, and sleep patterns, fair concentration, low energy, "not as depressed" mood, and coherent thought process and content. *Id*.[7]

Based on this court's review of the record, the ALJ committed no reversible error by failing to include Henry's GAF of 40 and 50. Although Henry is correct that the ALJ failed to mention Henry's October 2007 GAF score of 40 and December 2007 GAF score of 50, the ALJ discussed in detail Henry's school records, (R. 21), and medical records from February 1990 through December 2008, (R. 21-23). Importantly, the ALJ thoroughly discussed Dr. Arnold's consultative examination on November 20, 2007, where Dr. Arnold assessed

---

[6]Atarax is used to treat anxiety.

[7]On December 18, 2008, Mental Healthcare terminated Henry because he moved to Louisiana. (R. 313).

Henry as having a GAF score of 57 just one month after Henry's October 2007 GAF score of 40. (R. 23). Likewise, the ALJ reported Henry's "GAF was noted on July 7, 2008, [by Dr. Begum] as being estimated as 50-51, consistent with moderate to serious symptoms such as inability to keep a job." (R. 24). In other words, the record does not support Henry's contention that the ALJ considered Henry's GAF scores as "unimportant" by omitting the lowest and most remote scores.

Moreover, the "Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings." *Wind v. Barnhard*, 133 F. App'x 684, 692 n.5 (11th Cir. 2005). While an ALJ's "failure to evaluate a GAF score can constitute reversible error" when the claimant received repeatedly low GAF scores that indicate severe impairments, *see McCloud v. Barnhart*, 166 F. App'x 410, 418 (11th Cir. 2006) (remand warranted where the ALJ failed to consider claimant's GAF score of 45 and GAF score of 48 just two days before claimant filed for disability benefits), that is not the case here. In fact, here, even if the ALJ considered Henry's GAF score of 40 on October 31, 2007, Henry's subsequent GAF scores of 57 on November 20, 2007, 50 on December 7, 2007, and 50-51 on July 7, 2008, fail to

demonstrate that Henry's impairment remained severe and lasted the requisite length of time. 20 C.F.R. § 416.905(a) (disability defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be [ ] expected to last for a continuous period of not less than 12 months."). Indeed, Henry's rise in GAF score is substantiated by the 2008 treatment records where Henry reported decreased depression, and overall improvement that included statements that "life is pretty good," that he plans to remodel his home, and that he has no audio or visual hallucinations. (R. 315, 316, 321, 331). Therefore, to the extent the ALJ erred by omitting Henry's single, most remote GAF score of 40, the error was harmless.[8] As such, the ALJ's determination that Henry is not disabled is supported by substantial evidence.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Henry is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

---

[8] The court finds also that the ALJ's failure to consider Henry's December 2007 GAF score of 50 is harmless error because the ALJ considered the same score six months later in July 2008. (R. 24).

Done the 31st day of August, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE